Kirk Alan HEALY, Plaintiff, Appellee
and Cross-Appellant,

v.

Rebecca Deanne HEALY, Defendant,
Appellant and Cross-Appellee.

Civ. No. 11101.

Supreme Court of North Dakota.

Dec. 2, 1986.

Richard W. Olson, Grand Forks, for plaintiff, appellee and cross-appellant.

Kuchera, Stenehjem & Wills, Grand Forks, for defendant, appellant and cross-appellee; argued by Thomas John Kuchera.

MESCHKE, Justice.

Rebecca Deanne Healy appeals from an amended judgment allowing Kirk Alan Healy expanded visitation with the child of the divorced couple. Rebecca asserts that the trial court applied an incorrect standard of proof and erred in admitting the results of a polygraph test of Kirk. She also challenges the trial court's appointment of a guardian ad litem for the child and its order requiring the parties to obtain counseling. Kirk cross-appeals, claiming the court erred in not awarding him disbursements under § 28-26-06, N.D.C.C. We affirm.

Rebecca and Kirk were divorced in Kansas during February 1982. Rebecca was awarded custody of the couple's daughter, who was born September 1, 1979, and Kirk was granted "reasonable and liberal visitation ... as agreed upon by the parties...." Rebecca and the child moved to Grand Forks and resided with Rebecca's parents. Kirk, although a legal resident of Kansas, resided in various states because of his employment with an airline company. Visitation problems developed soon after the divorce and by March 1983 visitation provisions of the divorce decree had been amended twice by the Kansas court.

In May 1983 Rebecca moved the district court at Grand Forks to further amend the divorce decree to limit Kirk's visitation to supervised daytime visits. Later, Rebecca alleged that, according to her daughter, Kirk had sexually molested the child during a July 1983 weekend visit by inserting his finger into her vagina. After a May 1984 hearing on the motion, the court found that sexual abuse was not established. The court amended the decree to provide for daytime visitation one weekend per month, with overnight weekend visitation to commence in June 1985.

Visitation problems continued, and in May 1985, Kirk moved to expand his visitation rights. Rebecca responded with another motion to preclude unsupervised, overnight, or out-of-state visitation by Kirk. Rebecca's motion was based upon "new medical and psychological evidence" to support the allegation that Kirk had sexually abused the child. Following a three-day hearing of testimony of medical experts and social workers who had interviewed the child, the court found again that sexual abuse was not established. The court further found that since the initial divorce decree Rebecca had resisted all efforts by Kirk to have visitation with his daughter. The court expanded Kirk's visitation rights to include two weeks during summer vacation commencing in 1986 and increasing to two months in 1989 and thereafter. The court appointed a guardian ad litem, to be compensated equally by the parties, "to serve as [a] contact person for the parties and to have general supervision over" Kirk's visitation with the child. The court also ordered that each of the parents obtain separate psychological counseling with the child once every 60 days and submit reports to the court following the counseling sessions. The court directed that each party "shall pay their own fees and costs." It is this "Fourth Amended Judgment" that has been appealed.

*I—Standard of Proof*

At the conclusion of the hearing, the trial judge ruled that sexual abuse was not shown by a preponderance of the evidence. Rebecca asserts that the trial court employed an improper standard of proof under § 14–05–22(2), N.D.C.C., which provides:

"*14–05–22. Custody of children—Visitation rights.*

\* \* \* \* \* \*

"2. After making an award of custody, the court shall, upon request of the noncustodial parent, grant such rights of visitation as will enable the child and the noncustodial parent to maintain a parent-child relationship that will be beneficial to the child, unless the court finds, after a hearing, that visitation is likely to endanger the child's physical or emotional health."

In effect, Rebecca contends that a lesser showing, probable cause rather than a preponderance of the evidence, authorizes the finding that "visitation is likely to endanger the child's physical or emotional health," which justifies curtailment of visitation. We disagree.

Visitation between a child and the noncustodial parent is legally recognized to be in the best interests of the child. *Olson v. Olson*, 361 N.W.2d 249, 252 (N.D.1985). This right of visitation was long acknowledged as a matter of public policy before its codification in § 14–05–22(2), N.D.C.C. *See Gardebring v. Rizzo*, 269 N.W.2d 104, 110 (N.D.1978).

■ Probable cause is a minimal burden of proof. It is generally employed in the judicial decision-making process where the effect of the determination has temporary or short-term consequences, usually prior to trial. See, for examples, Rules 5.1 and 41(c), N.D.R.Crim.P.

■ Denying or severely restricting the right to visitation upon a mere showing of probable cause (except, perhaps, temporarily prior to a hearing) would not comport with the traditional function of a probable cause determination. Curtailing visitation on such a slight showing would be detrimental to the interests affected because of the increased risk of error and the long-term consequences. Accordingly, we reject Rebecca's argument that probable cause is the appropriate standard of proof to adjudicate restrictions on visitation. *Cf. In Re Juvenile Appeal (83–CD)*, 189 Conn. 276, 455 A.2d 1313, 1322–1325 (1983). We conclude that the trial court did not err in applying a standard of proof higher than probable cause.

*II—Polygraph Test*

Rebecca asserts that the trial court erred in admitting in evidence the results of a polygraph test of Kirk. Rebecca contends

that results of a polygraph examination are inadmissible in civil proceedings and that, even if admissible, there was inadequate foundation in this case to admit the test results. While Rebecca's contentions raise issues not before ruled upon by us,[1] our review of the record reveals that this assertion of error is overstated.

Prior to the hearing, Kirk's counsel submitted a brief accompanied by an affidavit of the polygraph examiner, which stated that Kirk answered truthfully when he denied that he had sexually abused his daughter, and by a letter resumé signed by the polygraph examiner. In response, Rebecca's counsel submitted a brief which argued that polygraph test results should not be admitted.

During the hearing, Kirk testified that he had not sexually abused his daughter and that the polygraph examiner "told me that he agreed with me." Counsel for Rebecca objected "to introduction of polygraph evidence or remarks pertaining to results of polygraph testing." The trial court overruled the objection, reasoning that it was "required under Supreme Court decisions to receive evidence, exhibits in evidence, unless it's obviously and clearly prejudicial." Kirk's counsel then asked Kirk whether he had reviewed the polygraph results and whether the results were "consistent with what happened as you recall it?" Kirk responded "yes" to both questions but Rebecca's counsel objected on the ground that an inadequate foundation had been laid for introduction of the polygraph test results. The court did not rule on the objection and Kirk's counsel

began questioning Kirk on another matter. Except for brief questioning of Rebecca by her counsel about previous polygraph tests taken by Kirk in connection with his employment and a reference to the polygraph test results during closing arguments by Kirk's counsel, the subject was not otherwise developed during the three-day hearing. Apparently, the polygraph examiner's affidavit and resumé were not formally offered or admitted as exhibits, nor did the examiner testify.

Because the polygraph test results were not directly placed in evidence, it is unnecessary for us to determine whether polygraph test results are admissible in civil proceedings or to address the foundational requirements which might be necessary to do so. However, we believe that Kirk's testimony about the polygraph test results was clearly inadmissible because it was hearsay under Rule 801, N.D.R.Evid.

█ In a nonjury case, a trial judge should ordinarily admit all evidence which is not clearly inadmissible because a trial judge who is competent to rule upon the admissibility of evidence can distinguish between admissible and inadmissible evidence when deliberating upon the ultimate decision. *Brodersen v. Brodersen,* 374 N.W.2d 76, 78–79 (N.D.1985). Therefore, in a bench trial it is generally not reversible error for the court to admit incompetent evidence unless there is insufficient competent evidence to support an essential finding or unless the incompetent evidence induced the court to make an improper find-

---

1. Although this court has not ruled upon the admissibility of polygraph test results in civil judicial proceedings, the question has been addressed in other contexts. In *State v. Pusch,* 77 N.D. 860, 46 N.W.2d 508 (1950), this court held that the results of a polygraph examination are not admissible in a criminal trial. *See also State v. Swanson,* 225 N.W.2d 283 (N.D.1974). However, where the prosecution and defense have stipulated to the admissibility of polygraph test results for the purposes of a motion for new trial, we have held that the court must consider the results in determining the merits of the motion. *State v. Yodsnukis,* 281 N.W.2d 255 (N.D.1979); *State v. Olmstead,* 261 N.W.2d 880

(N.D.), *cert. denied,* 436 U.S. 918, 98 S.Ct. 2264, 56 L.Ed.2d 759 (1978). In *Shulze v. Satran,* 368 N.W.2d 531 (N.D.1985), and *Varnson v. Satran,* 368 N.W.2d 533 (N.D.1985), we further held that it was not a violation of due process to allow a prison inmate to voluntarily submit to a polygraph examination and for the prison's Adjustment Committee and Parole Board to consider the results of the test, along with other evidence, in disciplinary proceedings and parole-release determinations.

For a recent discussion of the admissibility of unstipulated polygraph evidence in a civil trial, see *Brown v. Darcy,* 783 F.2d 1389 (9th Cir. 1986).

ing. *Schock v. Ronderos,* 394 N.W.2d 697, 699 (N.D.1986).

■ Here, there is sufficient competent evidence to support the trial court's finding that the alleged incident of sexual abuse was not established. Testimony of medical experts and social workers who had visited with the child took up most of the trial. Rebecca's family doctor, who examined the child four days after the alleged incident occurred, testified that he found no sign of injury to the hymen or labia. The rest of the medical testimony was about the interpretation of photographs and results of a colposcopy conducted on the child approximately two years after the alleged incident occurred. The experts disagreed whether the results of the examination indicated sexual abuse. The social workers who had interviewed the child also disagreed whether sexual abuse had occurred.

Nothing indicates that the incompetent evidence induced the court to make the finding that sexual abuse was not established. The court did not mention either Kirk's testimony about the polygraph results or Kirk's credibility in general. This was the second time that evidence about sexual abuse had been heard. Both hearings resulted in findings that sexual abuse was not established. In view of these circumstances and the lack of emphasis upon the polygraph test during the three-day hearing, we do not see how it influenced the trial court in arriving at its decision. *Cf. People in Interest of M.W.,* 374 N.W.2d 889, 892 (S.D.1985). Accordingly, this error does not require reversal.

### III—Guardian ad Litem

Rebecca argues that the trial court erred in appointing a guardian ad litem for the child at the conclusion of the hearing. The guardian ad litem was appointed "to serve as an advocate of the child's best interests and specifically to serve as contact person for the parties and to have general supervision over [Kirk's] visitation with the child...."

■ Pursuant to § 14–09–06.4, N.D.C.C., and Rule 4.1, N.D.R.O.C., the trial court in a custody, support, or visitation proceeding may, in its discretion and on its own initiative, appoint a guardian ad litem for a minor child where the court has reason for special concern as to the future welfare of the child. Contrary to Rebecca's position, we do not believe that the lack of a presently pending proceeding involving the child forecloses the trial court from appointing a guardian ad litem. The trial court has continuing jurisdiction over the care, custody and education of minor children. *Muraskin v. Muraskin,* 283 N.W.2d 140, 142 (N.D.1979).

■ These parties have had continuing problems with visitation ever since the initial divorce decree in February 1982. The court specifically found that Rebecca "has continually resisted all attempts by [Kirk] to have a normal father/daughter relationship with his child and to have visitation with his child free from interference from [Rebecca] and her family." A trial court abuses its discretion when it acts in an unreasonable, arbitrary or unconscionable manner. *Zajac v. Old Republic Ins. Co.,* 372 N.W.2d 897, 899 (N.D.1985). We cannot say that the trial court abused its discretion in appointing this guardian ad litem.

### IV—Counseling

Rebecca argues that the trial court erred in ordering the parties to obtain counseling. She claims that this order was based upon inadequate findings of fact and that there is no factual basis in the record to support it.

■ The purpose of findings required by Rule 52(a), N.D.R.Civ.P., is to enable the appellate court to obtain a correct understanding of the factual issues determined by the trial court as a basis for its conclusions of law and judgment. *Koller v. Koller,* 377 N.W.2d 130, 131 (N.D.1985). Findings that enable this court to understand the reasoning behind the court's decision are all that is necessary. *Koller, supra.* An oral recitation by the court from the

bench complies with Rule 52(a) and is entitled to consideration on appeal. *Quirk v. Swanson*, 368 N.W.2d 557, 561 (N.D.1985).

■ The trial court's written findings, as well as its comments from the bench, show that sufficient circumstances existed to warrant modification of the judgment to order the parties to obtain counseling. The court found that Rebecca and her family have interfered with Kirk's attempts at visitation. The trial court observed that Rebecca "has resisted every turn in the road to develop ... some basis for [Kirk] to participate with this child as a father should." The court also found that Rebecca's efforts to maintain exclusive custody and supervision of the child had become an "obsession," and that "she was going to prevent [Kirk] from visiting this child no matter what was required to do so." The record reflects that Rebecca had seen a counselor in the past with regard to divorce problems and she responded affirmatively when asked if she felt that a once recommended joint counseling session would have been of help to her. Additionally, counseling for these parents was specifically found to be in the best interests of this child.

Under these circumstances, we cannot say that the trial court erred in ordering the parties to obtain counseling.

### V—Disbursements and Fees

■ In his cross-appeal, Kirk asserts that the trial court erred in not allowing him disbursements under § 28–26–06, N.D. C.C. This court has held that the taxing of costs is discretionary with the trial court in a divorce case. *Klitzke v. Klitzke*, 308 N.W.2d 385, 390 (N.D.1981); *see also* § 28–26–10, N.D.C.C. In *Richter v. Jones*, 378 N.W.2d 209, 213 (N.D.1985), we stated that "[t]he allowance of disbursements under the statutes lies within the discretion of the trial court, which is in a better position to determine the reasonableness and necessity of the disbursements sought by the prevailing party, and the trial court's decision will be overturned only if an abuse of discretion is shown." Kirk has not shown

that the trial court abused its discretion in failing to allow disbursements in this case.

■ Kirk also claims that Rebecca's appeal is frivolous and seeks damages and costs pursuant to Rule 38, N.D.R.App.P. An appeal is frivolous if it is flagrantly groundless, devoid of merit, or demonstrates persistence in the course of litigation which evidences bad faith. *Mitchell v. Preusse*, 358 N.W.2d 511, 514 (N.D.1984). Rebecca's appeal is not substantively frivolous and we are not convinced that it was taken in bad faith. Accordingly, we deny Kirk's request.

The judgment is affirmed.

ERICKSTAD, C.J., and MESCHKE, VANDE WALLE and GIERKE, JJ., concur.

LEVINE, J., concurs in the result.