622 N.W.2d 232 (2001)
2001 ND 33
K.L.G., Plaintiff and Appellant,
v.
S.L.N., Defendant and Appellee.
No. 20000158.
Supreme Court of North Dakota.
February 15, 2001.
*234 Tom P. Slorby, Minot, ND, for plaintiff and appellant.
Denise C. Hays, Pringle & Herigstad, P.C., Minot, ND, for defendant and appellee.
VANDE WALLE, Chief Justice.
[¶ 1] K.L.G. appealed the district court's visitation order and allocation of transportation costs. K.L.G. argues the trial court erred by establishing an overly restrictive visitation schedule without sufficient justification and by allocating all the responsibility for transportation to him while reducing his child support obligation by only $25 a month. We reverse and remand.

I
[¶ 2] K.L.G. ("father") and S.L.N. ("mother") are parents of R.J.N.G. ("child") who was born October 16, 1998. The father and mother never married. Prior to the child's birth, the parents lived together for a few months in Minnesota. The mother moved to Stanley to live with her parents in May 1998. She continues to live with her parents and works as a medical transcriptionist earning about $1000 per month. The father lives in Morris, Minnesota, where he is employed in his family's business and earns about $1440 per month. It takes approximately seven to eight hours to drive from Morris, Minnesota, to Stanley, North Dakota.
[¶ 3] The father and mother maintained contact during the pregnancy and the father was present at the birth. The father estimates he has seen the child approximately every third week from birth to the time of the trial. The mother has not allowed overnight visitation or visitation outside of the Stanley and Minot area.
[¶ 4] The father initiated an action for paternity, custody, support, terms of visitation, costs of visitation, jurisdiction for child support, and designation of the right to claim the child for tax exemption. Both parents agreed K.L.G. was the father of the child, and physical custody should be given to the mother. The major points of contention were visitation schedule and transportation costs.
[¶ 5] Following a hearing on February 7, 2000, both parties submitted a proposed visitation schedule. The father's proposal provided for a transition time, beginning with short visitation restricted to the Stanley area due to the child's young age and need to adjust. The visitation schedule progressed to allow overnight visitation, and eventually, one week of visitation every month at the father's home in Minnesota. The father's plan also proposed alternating holidays. After the child started school, the father proposed longer summer visits to compensate for the loss of the week-long visits during the school year.
[¶ 6] The mother proposed visitation of one weekend per month which included one overnight visitation from Saturday morning to Sunday evening, geographically restricted to Minot, Stanley, or the surrounding area until the child turned two years old. Between the ages of two and three, the mother proposed one weekend per month, including two overnights from Friday morning to Sunday evening, still restricted to the Minot and Stanley area. Additionally, the mother proposed one week of summer visitation in the Morris, Minnesota area. Once the child turned three, but before starting school in the fall of 2004, the mother proposed visitation of one weekend per month including two overnights with no restrictions on location, and one week of summer visitation with no restriction on location. Additionally, the mother offered to travel to Minnesota as many as three times each year, staying in Minnesota for two nights each time. She proposed the child would spend one night with her and one with his father during these weekends.
[¶ 7] The district court issued a memorandum opinion, the basis for the judgment dated March 30, 2000. The judgment established a visitation schedule *235 similar to, but in some ways more restrictive than, the visitation proposed by the mother. The trial court extended the geographical restriction to age three and omitted the week-long visitation the mother had proposed for the summer of 2001. After the age of three, the trial court increased the visitation from one to two weekends per month, and extended the summer visitation from one week to two weeks anywhere in the United States or Canada.
[¶ 8] The visitation schedule alternated holidays, but restricted them in duration. For example, Christmas Day visitation began at 9:00 a.m. and ended at 8:00 p.m. the following day. Visitation on other holidays, such as the child's birthday and the Fourth of July, was restricted to only one day. The trial court did not include the offer of the mother to share the burden of transportation, instead it allocated all responsibility for transportation for visitation to the father. For that reason, the trial court reduced the father's child support obligation by $25 per month.

II
[¶ 9] A trial court's decision on visitation is a finding of fact which will not be reversed on appeal unless it is clearly erroneous as established by N.D.R.Civ.P. 52(a). Schiff v. Schiff, 2000 ND 113, ¶ 10, 611 N.W.2d 191. Because assessment of transportation costs is part of the broader issues of visitation and custody, we will apply the same standard of review to the trial court's determination of such costs. Berg v. Berg, 2000 ND 36, ¶ 18, 606 N.W.2d 895. A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if there is no evidence to support it, or if, although there is some evidence to support it, on the entire evidence we are left with a definite and firm conviction a mistake has been made. Fox v. Fox, 1999 ND 68, ¶ 7, 592 N.W.2d 541.

III
[¶ 10] The father argues the trial court erred by establishing an overly restrictive visitation schedule, more restrictive than the plan proposed by the mother, without reasonable justification. District courts have the authority to grant a noncustodial parent visitation rights. Ackerman v. Ackerman, 1999 ND 135, ¶ 13, 596 N.W.2d 332. Section 14-05-22(2), N.D.C.C., specifies "the court shall, upon request of the noncustodial parent, grant such rights of visitation as will enable the child and the noncustodial parent to maintain a parent-child relationship that will be beneficial to the child." Visitation is primarily concerned with the best interests of the child. Muraskin v. Muraskin, 336 N.W.2d 332, 336 (N.D.1983). Visitation between a child and a noncustodial parent is not merely a privilege of the noncustodial parent, but a right of the child. Johnson v. Schlotman, 502 N.W.2d 831, 835 (N.D.1993).
[¶ 11] The primary purpose of visitation is to promote the best interests of the children, not the wishes or desires of the parents. Moilan v. Moilan, 1999 ND 103, ¶ 29, 598 N.W.2d 81. Visitation with the noncustodial parent is presumed to be in the child's best interests. Hendrickson v. Hendrickson, 2000 ND 1, ¶ 21, 603 N.W.2d 896. Section 14-05-22(2), N.D.C.C., requires the court grant a noncustodial parent rights of visitation which will enable the maintenance of a beneficial parent-child relationship, allowing restriction or denial of this right only if "visitation is likely to endanger the child's physical or emotional health." See Ackerman, 1999 ND 135, ¶ 13, 596 N.W.2d 332 (stating the noncustodial parent is deprived of visitation only if visitation is likely to endanger the child's physical or emotional health); Hendrickson, 2000 ND 1, ¶ 21, 603 N.W.2d 896 (holding denying a noncustodial parent visitation with a child is an onerous restriction, such that physical or emotional harm resulting from the visitation must be demonstrated in detail before it is imposed); Healy v. Healy, 397 N.W.2d 71, 73 (N.D.1986) (determining an *236 order denying visitation must be based on a standard of proof higher than probable cause); Schiff, 2000 ND 113, ¶ 9, 611 N.W.2d 191 (stating to justify an onerous restriction on visitation, physical or emotional harm resulting from the visitation must be demonstrated in detail). As we explained in Johnson, 502 N.W.2d 831, 835 (N.D.1993), "[b]ecause minor children are entitled to the love and companionship of both parents insofar as this is possible and consistent with their welfare, we recognize that a healthy relationship between a parent and child may necessarily depend upon and develop through regular visitation." (citation omitted)
[¶ 12] In this case, the father lives eight hours away from his son and wants to develop a meaningful bond with his son through visitation. He requested a visitation schedule to accommodate this long drive by permitting fewer but longer duration visits, after an initial transition period. When there is a long distance between the homes of the custodial and noncustodial parents, we have approved visitation schedules which provide less frequent, but extended, visitation periods to preserve the noncustodial parent's ability to foster and develop a relationship with the child. Olson v. Olson, 2000 ND 120, ¶ 4, 611 N.W.2d 892. Recently we affirmed a visitation schedule which included six weeks of summer visitation in Asia to compensate for the lack of less frequent visits due to the long distance, holding there is no presumption that overseas visitation is detrimental to a child's best interests. Schiff, 2000 ND 113, ¶ 27, 611 N.W.2d 191. Also, in Tibor v. Tibor, 1999 ND 150, ¶ 24, 598 N.W.2d 480, we stated "[a] visitation schedule which provides less frequent, but extended, visitation periods will preserve a noncustodial parent's ability to foster and develop a relationship with the child."
[¶ 13] Similar to this case, accommodation of long distances between a noncustodial parent and a child is a major consideration of the court when deciding relocation motions by the custodial parent. Because it was impossible to physically satisfy both custodial and noncustodial relationships without a true joint physical custody arrangement, we recognized in Stout v. Stout, 1997 ND 61, ¶ 31, 560 N.W.2d 903, the importance of a modified visitation schedule providing for longer periods of continuous visitation to satisfy the loss of weekly visitation in the event of a move. The questions for the trial court in relocation cases include whether a reasonable visitation schedule can be fashioned to "preserve" and "foster" a relationship between the noncustodial parent and child; whether it will be complied with by the custodial parent; and whether the parties can financially support the schedule. Hawkinson v. Hawkinson, 1999 ND 58, ¶ 30, 591 N.W.2d 144 (Maring, J., specially concurring). We determined when cost and distance make it impossible to continue the same frequency of visits between noncustodial parent and child, "the court can and must restructure visitation to preserve their relationship with less frequent but more extended visits." Paulson v. Bauske, 1998 ND 17, ¶ 15, 574 N.W.2d 801.
[¶ 14] We reversed a judgment establishing a visitation schedule upon relocation of the custodial parent that not only decreased the frequency of the visits of the noncustodial parent with the child, but also decreased the total time the child had with that parent. Interest of B.E.M., 1997 ND 134, ¶ 20, 566 N.W.2d 414. We remanded to the district court to devise a visitation schedule which provided for less frequent visits but extended the time period of each visit to preserve the noncustodial parent's right to foster and develop a relationship with his child, in accordance with our holding in Stout. Id.
[¶ 15] This case does not involve a motion for relocation of the custodial spouse; however, in common with such cases is the difficulty of nurturing the relationship of a noncustodial parent with a child over a long distance with limited resources of both time and money. Although the district court recognized the *237 long-distance travel involved, it seemed to only recognize it as a reason to limit the time a young child would have to spend in a car seat. The court established, as a conclusion of law, the child was "16 months old and should not be spending 16 hours every other weekend on the road traveling." The court designed a visitation schedule that not only avoided long trips for the child while 16 months old, but also disallowed travel out of the Minot and Stanley area and extended visits until the child is three years old.
[¶ 16] Despite the trial court's concern about long-distance travel for the young child, the court designed a visitation schedule that did not consider the eight hours of travel each way for the noncustodial parent. Instead, the court fashioned a schedule that required the father to drive 16 hours for each two-day visit. Additionally, all of these visits are restricted to the Minot and Stanley area until the child is three years old, eliminating the possibility of the child having the opportunity to go with his father to his father's home.
[¶ 17] In Loll v. Loll, 1997 ND 51, ¶ 19, 561 N.W.2d 625, we reversed the trial court's order requiring all visitation to occur in North Dakota when the noncustodial parent lived in Missouri. By restricting the geographical location of the visitation the trial court "created a serious impediment in fostering the parties' relationships" with the children. Id. Because of the need for one parent to uproot from her home, we anticipated visitation would be more difficult and less frequent. Id. Also, we found allocation of all costs of travel to one parent to be inequitable. Id. at ¶ 20, 561 N.W.2d 625. In Loll, we reversed the visitation order and remanded to determine a visitation schedule and cost allocation that was more flexible and equitable or to provide a satisfactory explanation for the present unequal distribution. Id.
[¶ 18] Similarly, the visitation schedule and cost allocation in this case create a serious impediment to fostering the father's relationship with the child. By requiring the father to drive 16 hours for each two-day visit and not allowing any extended visits to the father's home until after the child is three, the trial court made visitation more difficult and therefore it is likely it will be less frequent. Beyond the concerns about a 16-month old spending 16 hours in a car seat, the trial court gave no reason for restricting the visitation further than the schedule proposed by the mother. The record does not support the restrictions placed on visitation. Loll, 1997 ND 51, ¶ 20, 561 N.W.2d 625.
[¶ 19] The child is no longer 16 months old, but is now over two years old. We have long recognized it is important for a child to develop a relationship with both parents. However, this important concern seems to be engulfed by the trial court's concern about extended travel when the child was very young. Neither the father nor the mother proposed the child travel 16 hours every other weekend when the child was 16 months old. But, with no other explanation, the trial court issued a visitation schedule more restricted than the plan proposed by the mother in regards to geographic restriction, visits of longer duration, and transportation responsibility. On the entire evidence we are left with a definite and firm conviction a mistake has been made.
[¶ 20] We reverse and remand for determination of a visitation schedule and the allocation of travel responsibility and expenses in accordance with this opinion.
[¶ 21] DALE V. SANDSTROM, WILLIAM A. NEUMANN, MARY MUEHLEN MARING and CAROL RONNING KAPSNER, JJ., concur.