2005 ND 31

**Sandra WIGGINTON, Plaintiff and Appellee**

**v.**

**Joel WIGGINTON, Defendant and Appellant.**

**No. 20040153.**

Supreme Court of North Dakota.

Feb. 16, 2005.

Kevin J. Chapman (argued), Chapman Law Office, Williston, ND, for plaintiff and appellee.

Tom P. Slorby (argued) and Eric P. Baumann (on brief), Slorby Law Office, Minot, ND, for defendant and appellant.

KAPSNER, Justice.

[¶ 1] Joel Wigginton appeals an amended judgment granting Sandra Wigginton custody of their two children and granting him visitation at her discretion, ordering him to pay child support effective June 1, 2001, and allowing Sandra Wigginton to claim both children as dependents on her income tax returns. We affirm the award of custody, visitation and tax dependency and reverse the effective date of the child support obligation.

I.

[¶ 2] Joel Wigginton and Sandra Wigginton divorced in 1999 after 10 years of marriage. They have two minor children. He farms near Ambrose and plans to begin custom combining and doing contract concrete work for additional income. She owns Divide County Abstract in Crosby.

[¶ 3] The original divorce decree granted joint custody and liberal visitation to both parties. Sandra Wigginton had the children April through September subject to liberal and reasonable visitation by Joel Wigginton, and he had the children October through March subject to liberal and reasonable visitation by her. No set amount of child support was ordered; instead, the parties were ordered to share all expenses equally. Sandra Wigginton was to maintain health insurance for the children, and Joel Wigginton was to reimburse her one-half the cost. Each party was allowed to claim one of the children as a dependent for income tax purposes.

[¶ 4] This arrangement worked well until spring 2001, when Joel Wigginton was charged with possession of methamphetamine and paraphernalia with intent to deliver. These charges were dismissed on a search warrant issue, but Joel Wigginton acknowledged a dependency problem and voluntarily checked himself into a rehabilitation facility. He claims to have been drug-free since, although he failed a urine analysis at the close of trial.

[¶ 5] Sandra Wigginton filed a motion to modify judgment on May 21, 2001. An ex parte order was issued that same day granting her "sole, primary care, custody and control of the minor children of the parties, subject to supervised visitation rights of [Joel Wigginton] . . ." The order was to remain in effect until a hearing could be held, and it did not mention child support. The children have lived with Sandra Wigginton full-time since, and Joel Wigginton continued to reimburse her for one-half of the children's expenses. He testified he was billed for and paid approximately $300 monthly from May 2001 through September 2003 for expenses. Sandra Wigginton acknowledged receipt of these payments.

[¶ 6] A hearing was held on Sandra Wigginton's motion on February 19, 2004. At the hearing she testified that Joel Wigginton was often late for visitation and saw the children less frequently after May 2001. She said he seldom attended their

sporting events and other school activities. Joel Wigginton said he would like to see his children more, but his farm is 11 miles from her home and he never has the kids long enough to justify the drive. He also testified that he works a lot and is very busy between farming and working on his house. Both parties agree Sandra Wigginton has never denied Joel Wigginton visitation when he has requested it.

[¶ 7] The district judge issued a first amended judgment on April 15, 2004. The judgment granted Sandra Wigginton "primary care, custody and control . . . subject to reasonable visitations [by Joel Wigginton] . . . to be conducted at the sole discretion of [Sandra Wigginton]." The judgment granted her discretion to require him to submit to drug testing, have certain persons present during visitation, and forbid certain persons from being present during visitation. The judgment further ordered Joel Wigginton to pay child support of $252 per month effective June 1, 2001. Sandra Wigginton was allowed to claim both children as dependents starting with her 2004 income tax return. Joel Wigginton appealed.

## II.

[¶ 8] A trial court's decision on visitation is a finding of fact reviewed under the clearly erroneous standard of review. *Berg v. Berg*, 2002 ND 69, ¶ 4, 642 N.W.2d 899. A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if no evidence exists to support it, or if, upon review of the entire record, this Court believes a mistake has been made. *Id.*

[¶ 9] The decision to award visitation to a noncustodial parent is based on the best interests of the child and not the wishes or desires of the parents. *K.L.G. v. S.L.N.*, 2001 ND 33, ¶ 11, 622 N.W.2d 232;

*Moilan v. Moilan*, 1999 ND 103, ¶ 29, 598 N.W.2d 81.

> After making an award of custody, the court shall, upon request of the noncustodial parent, grant such rights of visitation as will enable the child and the noncustodial parent to maintain a parent-child relationship that will be beneficial to the child, unless the court finds, after a hearing, that visitation is likely to endanger the child's physical or emotional health.

N.D.C.C. § 14–05–22(2). A restriction on visitation must be based on a preponderance of the evidence and accompanied by a detailed demonstration of the physical or emotional harm likely to result from visitation. *Johnson v. Schlotman*, 502 N.W.2d 831, 835 (N.D.1993).

[¶ 10] Joel Wigginton argues he has been denied visitation with his children. The amended judgment actually states, ". . . subject to reasonable visitations being awarded to [Joel Wigginton], but to be conducted at the sole discretion of [Sandra Wigginton]." The judge's order explains the basis for his decision:

> After the testimony and after oral arguments of counsel, . . . Joel Wigginton, was ordered to submit a urine sample for the purpose of testing for the use of marijuana and/or methamphetamine. At the close of the hearing, [Joel Wigginton] was to go to the Williams County Jail to give the urine sample . . . [Joel Wigginton] tested negative for marijuana but positive for methamphetamine use.
>
> This motion was originally filed by [Sandra Wigginton] when [Joel Wigginton] was arrested for having a methamphetamine lab at his farm. [Joel Wigginton] was charged, but he never went to trial . . . While spared the possibility of jail, [Joel Wigginton] was nevertheless using methamphetamine and apparently took

his arrest as a wake-up call. He entered and completed a treatment program and went through aftercare as well.

[Joel Wigginton] testified on the stand that his use of methamphetamine harmed his relationship with his children and did place his children in danger. [Sandra Wigginton] had requested that testing be a part of any visitation order, as she was concerned that [Joel Wigginton] had not stopped the use of methamphetamine. It appears [Sandra Wigginton's] fears were warranted. [Joel Wigginton] continues to use methamphetamine and had done so within a few days of trial. [Joel Wigginton] does not appear to have a handle on his drug use, and this drug use places his children in danger.

... Giving a party such control over visitation is an unusual ruling and is not done lightly. [Sandra Wigginton] has shown that she will not play the games sometimes seen in these situations. [Sandra Wigginton] has not denied [Joel Wigginton] visitations when the request was reasonable. [Sandra Wigginton] is deeply concerned that the children, for the children's benefit, maintain a relationship with their father. [Sandra Wigginton] is simply concerned for the children's safety. I have the utmost faith in [Sandra Wigginton], that she will allow [Joel Wigginton] to see the children as much as is possible and safe. If [Sandra Wigginton] requires drug testing, so be it. If she requires third parties to be present, or specific people to not be present, so be it. The bottom line is [Joel Wigginton] will need to re-earn the trust that he has lost, the trust of his children as well as their mother.

If [Joel Wigginton] ever feels in the future that [Sandra Wigginton] is wrongfully restricting his visitation, he will be allowed to file a motion, and the Court will revisit this issue. But for now, [Sandra Wigginton] is 100% in charge, and what she says goes.

[¶ 11] Sandra Wigginton correctly argues that Joel Wigginton has not technically been denied visitation with his children, but there is no doubt his visitation has been restricted. This Court has held visitation should be restricted only upon a showing by the preponderance of the evidence that visitation "is likely to endanger the child's physical or emotional health." *Healy v. Healy*, 397 N.W.2d 71, 73 (N.D. 1986); N.D.C.C. § 14–05–22(2). Joel Wigginton testified his methamphetamine use places his children in danger and harms his relationship with them. The trial court considered this testimony along with the fact Joel Wigginton tested positive for methamphetamine use at the close of trial. While the record contains no evidence of actual physical or emotional harm to the children, both parties acknowledge there is a potential for such damage.

[¶ 12] The record contains sufficient evidence for the trial court to restrict Joel Wigginton's visitation, including his history and the results of the urine analysis. The provisions the trial court used to restrict that visitation are highly unusual and, as the trial court said, should not be "done lightly." This Court has said visitation is "a right of the child which is not to be subverted by the custodian." *Gardebring v. Rizzo*, 269 N.W.2d 104, 110 (N.D. 1978). Giving the custodial parent such complete discretionary authority over the manner and timing of visitation should be used only when there is a demonstrated need to protect the children from the potential for physical or emotional harm *and* where, as here, the custodial parent has demonstrated that he or she is "deeply concerned that the children, for the children's benefit, maintain a relationship

with" the noncustodial parent. The findings of the trial court specifically indicate Sandra Wigginton's willingness to foster the parent-child relationship between Joel Wigginton and his children. The court made a point of stating the visitation award can be modified at any time if Joel Wigginton feels he is being treated unfairly by Sandra Wigginton. He can also move to modify visitation once he has taken actions to convince the court he is no longer using drugs. Based on the evidence in this case, the trial court's award of custody and restricted visitation is not clearly erroneous.

### III.

 [¶ 13] Child support determinations are mixed questions of law subject to the de novo standard of review, findings of fact subject to the clearly erroneous standard of review, and may include matters of discretion subject to the abuse of discretion standard of review. *Lukenbill v. Fettig*, 2001 ND 47, ¶ 9, 623 N.W.2d 7 (quoting *Buchholz v. Buchholz*, 1999 ND 36, ¶¶ 11, 12, 590 N.W.2d 215). "The determination of back child support under N.D.C.C. § 14–17–14(4) lies within the trial court's discretion, and its decision will be reversed on appeal only if the court abused its discretion." *Lukenbill*, at ¶ 6 (quoting *In re S.J.F.*, 2000 ND 158, ¶ 22, 615 N.W.2d 533). "A district court abuses its discretion if it acts arbitrarily, capriciously, or unreasonably." *Lukenbill*, at ¶ 6 (citing *Christl v. Swanson*, 2000 ND 74, ¶ 7, 609 N.W.2d 70).

 [¶ 14] Under the original judgment, the parties were to share the children and expenses equally. After the ex parte order in May 2001, the children spent most of their time with Sandra Wigginton. Both parties acknowledge Joel Wigginton continued to pay half the expenses, or approximately $300 per month,

until September 2003. Sandra Wigginton stated at trial, "he paid me up until September." She testified that he paid her everything she asked for, and she acknowledged certain expenses that she did not request compensation for, such as mileage to and from the children's events. Sandra Wigginton further stated that Joel Wigginton had paid her for half of what she spent on the kids, and the only expenses she had paid herself were housing, food, and heat. She again stated he paid the full amount requested until September 2003. Sandra Wigginton's attorney said in his closing arguments, "[w]e don't need to talk about what Joel has—what Joel did pay. That's not an issue." He also concurred with the judge's statement that Joel Wigginton paid his half of the expenses until September 2003.

[¶ 15] The district court decided to make Joel Wigginton's child support obligation effective June 1, 2001, despite testimony by both parties that he complied with the original judgment until September 2003. Sandra Wigginton claims this decision was not an abuse of discretion because the original judgment contemplated both parties would have physical custody of the children, but beginning in May 2001, they were primarily in her care. She acknowledged at trial that Joel Wigginton complied with the original judgment until September 2003, and paid her everything she asked him for.

[¶ 16] We have said, "[t]he amount of child support is set from the date of the motion to modify, absent a good reason for not doing so." *McDowell v. McDowell*, 2003 ND 174, ¶ 28, 670 N.W.2d 876 (citing *Geinert v. Geinert*, 2002 ND 135, ¶ 10, 649 N.W.2d 237). Although Sandra Wigginton filed her motion to modify in May 2001, neither party denies that Joel Wigginton complied with the original child support order through September 2003. It is also

undisputed that he paid an average of $300 per month.

[¶ 17] Under these circumstances, the trial court could have entered the order effective the date of the motion and given Joel Wigginton credit for child support actually paid against the amended order. However, the trial court did not engage in such an analysis, and the parties did not provide adequate evidence for it to do so. There is merely evidence that Sandra Wigginton billed Joel Wigginton and that his expenditures were approximately $300 per month. Affirming the date that child support was to commence under the amended judgment would leave Joel Wigginton subject to two judgments for child support. Based on the facts of this case, we find there are sufficient good reasons for making Joel Wigginton's support obligation effective after the date of the motion. Joel Wigginton's child support obligation should be effective the month after he stopped complying with the original judgment, or October 1, 2003.

### IV.

[¶ 18] A trial court has the authority to allocate income tax dependency exemptions. *Lukenbill*, 2001 ND 47, ¶ 13, 623 N.W.2d 7 (citing *Mahoney v. Mahoney*, 1997 ND 149, ¶ 21, 567 N.W.2d 206). Such allocations are reviewed under the clearly erroneous standard. *Id.* The order states, "2. [Sandra Wigginton] will claim both children as dependants for income tax purposes beginning in the year 2004." There are no findings of fact supporting the judge's decision, but the reasons for it can be determined from the record.

[¶ 19] Trial exhibits and testimony by both parties indicate Joel Wigginton has shown a loss on his recent income tax returns. Both parties agree the tax exemptions should be maximized. Based on the parties' current incomes, it makes the most sense for Sandra Wigginton to claim the children as dependents. The trial court's allocation of the income tax dependency exemptions is not clearly erroneous.

### V.

[¶ 20] We affirm the awards of custody, visitation, income tax dependency allocations, and the amount of child support. We reverse the award of child support as to the effective date of the obligation and direct that the judgment for child support be amended to an effective date of October 1, 2003.

[¶ 21] GERALD W. VANDE WALLE, C.J., MARY MUEHLEN MARING, and WILLIAM A. NEUMANN, JJ., concur.

SANDSTROM, Justice, concurring specially.

[¶ 22] I write separately to once again note that the right of noncustodial parents to visitation is not just a "wish or desire"— not just a statutory right—it is a right of constitutional magnitude. *Berg v. Berg*, 2002 ND 69, ¶¶ 24–33, 642 N.W.2d 899 (Sandstrom, J., concurring in the result). Unless restricted or forfeited by serious misconduct of the noncustodial parent, noncustodial-parent visitation rights must be vindicated by court judgment and enforced by court action if necessary. *See id.* at ¶ 32; N.D.C.C. § 14–09–06.6.

[¶ 23] Dale V. Sandstrom