PITTMAN, Judge.
Tiffany E. Hardy (“the mother”) appeals following the denial of her postjudgment motion seeking relief from a custody-modi *635 fication judgment entered by the Montgomery Circuit Court and from an earlier judgment that divorced her from Cedric L. Weathers (“the father”). For the reasons explained below, we cannot address the propriety of the divorce judgment, but we must reverse the custody-modification judgment and remand the cause for further proceedings.
The father filed a complaint seeking a divorce on March 7, 2008. In that pleading, the father asserted that the parties were married on October 4, 2005; that a daughter had been born on October 22, 2007; that the parties had separated on December 17, 2007; and that the parties’ child had been living with the father since birth.
The trial court entered a default judgment divorcing the parties on August 20, 2008. In October 2008, the mother, acting pro se, filed a “petition to modify for custody or visitation” and requested a hearing. In her petition, the mother asserted that she had left the marital residence because the father had become physically abusive, that he had refused to vacate the residence or to let her leave with the child, and that police officers called to the scene had instructed her to leave without the child because it was “late and very cold.” The mother also asserted that she had attempted several times to recover custody of or to establish visitation with the child but that, on those occasions, the father had threatened her. At the hearing on her petition, the mother stated that she had never received notice of the trial date, that she had personally sent an answer to the father’s divorce complaint directly to the father’s attorney, and that she had telephoned that attorney to obtain information regarding upcoming court dates but had been told that no trial or hearing dates were set.
Rather than treating the mother’s petition as a motion to set aside the default judgment, the trial court conducted a custody-modification hearing, applied the Ex parte McLendon, 455 So.2d 863 (Ala.1984), standard, and determined that the mother had not met that standard and, thus, was not entitled to a modification of custody. In that modification judgment, entered on January 27, 2009, the trial court imputed a minimum-wage salary to the mother and ordered her to pay monthly child support to the father in the amount of $340. The modification judgment also ordered the parties to agree upon a child-visitation schedule for the mother and to file it with the court; if no schedule was filed within 30 days, the trial court ordered, the mother would be awarded four hours of visitation every second Saturday of the month as a “phase in” period. The father was “vested with the authority to allow overnight visitation if he believes the child to be safe and further believes that overnight visitation is in the child’s best interest.”
For the first time in these proceedings, the mother hired an attorney who filed a postjudgment motion on February 23, 2009. In that motion, the mother’s attorney asserted that the petition filed by the mother was in fact a challenge to the default judgment, not a modification petition. Moreover, the motion alleged that the father had obtained a default judgment by fraud or by misrepresenting to the trial court that the mother could not be located or had otherwise intentionally failed to answer the father’s complaint seeking a divorce. That motion reiterated the mother’s contention in the previous pro se filing with the trial court that she had filed an answer to the divorce complaint, albeit by filing it with the father’s attorney instead of with the trial court, and the motion asserted that both judgments should be set aside and that a full trial on the merits should be conducted without application of *636 the McLendon standard. On April 22, 2009, that postjudgment motion was denied, and this appeal follows.
The mother might have won a reversal of the default judgment of divorce if she or her attorney had fíled a direct appeal from the January 27, 2009, judgment. If we accept the contention that the mother’s “modification petition” was in fact a Rule 60(b), Ala. R. Civ. P., motion, then an appeal filed within 42 days of January 27, 2009 (i.e., on or before March 10, 2009), would have timely placed the issue of the correctness of denying that motion before this court. However, the mother’s attorney instead filed a postjudgment motion on February 23, 2009, and waited for the trial court to rule on that motion, which occurred in April 2009, before perfecting an appeal to this court. Therefore, treating the mother’s modification petition as a Rule 60(b) motion does not provide the mother any relief at this juncture because we would have to dismiss the present appeal as untimely. Alabama law is well established that filing successive post-judgment motions does not toll the time for taking an appeal. See, e.g., Ex parte Keith, 771 So.2d 1018, 1022 (Ala.1998), and Pinkerton Sec. & Investigation Servs., Inc. v. Chamblee, 961 So.2d 97, 102 (Ala.2006); see also Pinkerton Sec. & Investigations Servs., Inc. v. Chamblee, 934 So.2d 386, 390 (Ala.Civ.App.2005). In this case, if we were to treat the mother’s October 2008 petition as a Rule 60(b) motion challenging the default judgment, the failure to appeal the January 2009 denial of that motion within 42 days would make this appeal untimely.[1]
Thus, if the mother’s appeal was timely, it was timely only insofar as it challenged the trial court’s custody-modification judgment. The mother makes two contentions regarding the custody-modification judgment. First, she challenges the trial court’s award of only four hours per month visitation with the parties’ child and its stipulation that additional overnight visitation be allowed only at the discretion of the custodial parent, i.e., the father.
Although the trial court could have awarded standard visitation following a “phase in” period, it did not do so. Although the determination of proper visitation “is within the sound discretion of the trial court,” see Ex parte Bland, 796 So.2d 340, 343 (Ala.2000), that court cannot properly allow the custodial parent to detex--mine the noncustodial parent’s visitation schedule. See K.L.R. v. L.C.R., 854 So.2d 124, 132-33 (Ala.Civ.App.2003); see also K.L.U. v. M.C., 809 So.2d 837, 840-41 (Ala.Civ.App.2001), and Bryant v. Bryant, 739 So.2d 53, 56 (Ala.Civ.App.1999). We conclude that the trial court acted within its discretion in oi’dering a “phase in” period to allow the child to adjust to visitation with the mother; howevex-, the tidal court erred in failing to establish a regular visitation schedule following the “phase in” period.
The mother also contends that the trial court erred in ordering her to pay $340 in monthly child suppoi't when the income information provided by the mother established that she earned only $1,040 per month.
The only testimony concerning the mother’s income occurred near the end of the custody-modification hearing.
“THE COURT: Okay. Now, you work at Wal-Mart at the Supercenter?
“[MOTHER]: Yes, ma’am. Right now, I’m presently — I don’t know how long I’ll probably be there due to me *637 having — something is wrong with my legs.
“THE COURT: And you submitted a pay stub from 12/19/08. Okay. This shows — how much do you make?
“[MOTHER]: 9.03 an hour.
“THE COURT: For 40 hours?
“[MOTHER]: No, ma’am. I only get like 28 to 30 hours, sometimes less than that. They be cutting our hours due to the economy.”
Rule 32, Ala. R. Jud. Admin., provides mandatory guidelines for trial courts to follow when determining a parent’s child-support obligation. “ ‘This court has previously stated that a parent’s ability to pay child support is a crucial factor to be considered in the determination of child support.’ ” Pardue v. Pardue, 917 So.2d 857, 862-63 (Ala.Civ.App.2005) (quoting Stewart v. Kelley, 587 So.2d 384, 385 (Ala.Civ.App.1991)). Although Rule 32(B)(5), Ala. R. Jud. Admin., allows a trial court to impute income to a parent if it first makes a finding that the parent is “voluntarily unemployed or underemployed,” the trial court in this case had absolutely no evidence from which to conclude that the mother was voluntarily underemployed. No evidence was offered indicating that the mother had ever earned an annual salary in excess of $13,459.[2] In fact, as the mother asserts on appeal, the only evidence as to the mother’s income provided at trial indicates that the trial court could have made a downward deviation from the guidelines based upon the mother’s low income and work history. See generally Rule 32(A)(ii), Ala. R. Jud. Admin. Moreover, the trial court stated on the record that it would not inquire into the father’s present income but would use a six-month-old income affidavit that the father had previously provided. Although the trial court could have deviated from the child-support guidelines by making a written finding that such a deviation was warranted, the court did not do so in this case. From the sparse record before us, we are unable to determine how the trial court reached its determination regarding the child-support issue. See, e.g., Hood v. Hood, 23 So.3d 1160, 1165 (Ala.Civ.App.2009). Accordingly, we reverse that part of the trial court’s judgment pertaining to child support, and we remand the cause for the trial court to calculate the mother’s child-support obligation pursuant to the Rule 32 child-support guidelines.
Having concluded that the only issues properly before this court are issues pertaining to the visitation and child-support provisions of the custody-modification judgment, and having concluded that the trial court erred in entering both of those provisions, the custody-modification judgment is reversed only as to those provisions, and the cause is remanded for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
THOMAS and MOORE, JJ., concur.
THOMPSON, P.J., and BRYAN, J., concur in the result, without writings.

. The record reflects that the mother filed her notice of appeal on June 2, 2009.

. The mother provided her 2007 tax return to the trial court, which indicated that she had earned a net income of $13,459 in 2007.