(SC 20882)

Robinson, C. J., and McDonald, D'Auria, Mullins,
Ecker, Alexander and Dannehy, Js.

*Syllabus*

The defendant mother appealed from the trial court's order modifying custody of the parties' minor children. The defendant claimed, inter alia, that the trial court, in modifying custody, had improperly delegated its judicial authority to the plaintiff father when it gave him the power to unilaterally suspend the defendant's visitation with R, the parties' son, if the plaintiff "reasonably determine[d]," after consultation with R's therapist, that R's unsupervised visits with the defendant were causing R to endure negative behavioral or emotional consequences. *Held*:

The trial court's order authorizing the plaintiff to exercise unilateral control over the defendant's visitation with R was an improper delegation of judicial authority, as a court may not delegate to a custodial parent the authority to suspend the visitation rights of a noncustodial parent.

(*Two justices concurring separately in one opinion*)

Argued December 18, 2023—officially released August 14, 2024**

*Procedural History*

Action for the dissolution of a marriage, and for other relief, brought to the Superior Court in the judicial district of Middlesex, where the defendant filed a cross complaint; thereafter, the court, *Albis*, *J.*, rendered judgment dissolving the marriage and granting certain other relief in accordance with the parties' separation agreement; subsequently, the court granted the plaintiff's motion to modify custody of the parties' minor children, and the defendant appealed; thereafter, the Appellate Court, *Clark* and *Seeley*, *Js.*, with *Bright*, *C. J.*, concur-

---

* In accordance with federal law; see 18 U.S.C. § 2265 (d) (3) (2018), as amended by the Violence Against Women Act Reauthorization Act of 2022, Pub. L. No. 117-103, § 106, 136 Stat. 49, 851; we decline to identify any person protected or sought to be protected under a protection order, protective order, or a restraining order that was issued or applied for, or others through whom that person's identity may be ascertained.

** August 14, 2024, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

R. H. *v.* M. H.

ring in part and dissenting in part, reversed in part and remanded the case for further proceedings; subsequently, the Appellate Court granted the plaintiff's motion for reconsideration en banc, and the appeal was transferred to this court. *Reversed in part*; *further proceedings*.

*M. S.*, self-represented, the appellant (defendant).

*Kenneth J. McDonnell*, with whom was *Paige S. Quilliam*, for the appellee (plaintiff).

*Giovanna Shay*, *Jill Davies*, *Enelsa Díaz*, *Lorraine Carcova*, *Nilda Havrilla*, *Shelley White*, *Jessica Nelson* and *Bryan Pimentel*, law school intern, filed a brief for the Greater Hartford Legal Aid et al. as amici curiae.

*Cindy Cartier* filed a brief for the Shared Parenting Council of Connecticut, Inc., as amicus curiae.

*Aidan R. Welsh* filed a brief for the Connecticut Bar Association as amicus curiae.

*Opinion*

McDONALD, J. The sole issue in this appeal is whether the trial court improperly delegated its judicial authority when it gave the plaintiff father, R. H., the authority to decide the nature and scope of the visitation his ex-spouse, the defendant mother, M. H., could have with their minor child, R. Specifically, the trial court's visitation order provided that, if, "at any time," the plaintiff "reasonably determines" that R was negatively impacted by the defendant's visitation, the plaintiff may, among other things, "suspend" the defendant's visitation with R. The defendant appeals from the trial court's decision to grant the plaintiff's motion for modification of the order of custody over the parties' minor children. The defendant claims that the trial court improperly delegated its judicial authority to the plaintiff when it gave him the authority to suspend her visitation with R if the plaintiff reasonably determined that the unsu-

R. H. *v.* M. H.

pervised visits were causing R to endure negative behavioral or emotional consequences. Although the trial court attempted to balance the interests of the parties and the children, we conclude that the trial court improperly delegated its judicial authority to the plaintiff. Accordingly, we reverse that part of the trial court's order[1] modifying custody.

The following facts and procedural history are relevant to our analysis. Following the dissolution of their marriage, the parties had joint legal custody and shared physical custody of their daughter, S, and their son, R. Over the ensuing months, the parties' ability to effectively coparent broke down. On June 12, 2019, the plaintiff filed a motion to open the judgment and to modify custody that sought sole legal and physical custody of the children. While the June 12 motion was pending, in September, 2019, the parties agreed to a custody evaluation to be performed by a psychologist specializing in family matters and not to consume alcoholic beverages in excess during each party's parenting time with the children. The defendant had abused alcohol, and she agreed to use Soberlink, an alcohol monitoring devise.

Before the trial court took any action on the June 12 motion, on October 30, 2019, the plaintiff filed an application for an emergency ex parte order of custody, requesting temporary sole custody of the children on the ground that the defendant had been intoxicated at 6:49 a.m. that same day while the children were in her care. The court granted the emergency application, awarding temporary custody to the plaintiff and ordering that the defendant was to have "reasonable visitation as agreed by the parties and with such supervision

---

[1] Although the trial court's order addressed various motions filed by the plaintiff, this appeal concerns only the court's ruling on the motion to modify the order of custody. Accordingly, we do not disturb the trial court's other rulings.

R. H. *v.* M. H.

as [the plaintiff] may approve or require.'' The trial court subsequently clarified its order on the emergency application to state that the plaintiff was to have temporary sole physical custody of the children. Numerous other motions were filed by the parties during the months prior to the court's hearing on the June 12 motion.

In June, 2020, the trial court modified the ex parte order of custody to allow the defendant to have unsupervised visitation with her children provided she complied with certain conditions. Thereafter, the defendant filed a motion for clarification, seeking the court's guidance on, among other things, how the parties should proceed if they cannot agree to visitation as required by the court's previous order. In the motion, the defendant explained: ''I am asking for clarification because I am being prevented from seeing my children; visitation is being hindered by the plaintiff . . . . Since the filing of the ex parte motion, I have seen my children for less than seventy hours in the past year, due to the [plaintiff's] . . . failure to agree to regular and substantial visitation. . . . Not only has [the plaintiff] failed to agree to regular visitation, he has failed to allow any contact between me and my children. I have had no contact with my children since [August 10] 2020.'' (Emphasis omitted; footnote omitted.) The court denied the motion.

At a status conference in November, 2020, the trial court scheduled a hearing on the various pending motions to begin in April, 2021. Prior to the start of that hearing, however, the plaintiff filed a motion to modify the then existing ex parte order, seeking sole legal custody of the children. Following a hearing on that motion, the trial court declined to award the plaintiff sole legal custody but concluded that the plaintiff would have

R. H. *v.* M. H.

final decision-making authority in the event of an impasse on certain decisions about the children's therapy or education.

Over the course of six separate dates, spanning several months, the trial court heard evidence concerning the numerous outstanding motions that it had yet to rule on, including the plaintiff's June 12 motion. Thereafter, the trial court issued a memorandum of decision addressing the various pending motions. The trial court found, among other things, that the defendant's behavior was the underlying cause of the majority of the issues between the parties. The court explained that the defendant's "love for the children and [her] positive parenting qualities [were] neutralized by her mistrust of the [plaintiff] and others, her denigration of the [plaintiff], and her efforts to justify her actions and [to] advance her own agenda."[2] The trial court also cited several examples of the defendant's negative conduct, including that she threatened the children's medical providers with complaints of violations of medical privacy laws, accused S's therapist of insurance fraud, threatened litigation against R's school, accused the children's guardian ad litem of committing check fraud, and threatened to seek the arrest of the parties' parenting counselor. The court also noted the negative impact some of the defendant's actions had on her children. As to the plaintiff, the court noted that he "has not always been as communicative about the children with the [defendant] as would be ideal. Under the circumstances, his reticence is understandable, but it has heightened the [defendant's] mistrust of him. To his credit, the [plaintiff] has been a steady hand in raising the children through the periods of conflict with the [defendant] and her attempts to cope with her personal issues."

_____

[2] The trial court also concluded that the defendant had not caused any physical harm to the children, and there was no reason to believe that she would do so.

R. H. *v.* M. H.

As a result, the trial court granted the plaintiff's June 12 motion and awarded him sole legal custody of the children. It further ordered that the children reside primarily with the plaintiff, explaining that the defendant needed to engage in mental health treatment before her parenting time could be increased.

The trial court's order also limited the defendant's visitation with S to family therapy and ordered that the parties may agree on further visitation if recommended by the family therapist. With respect to R, the trial court ordered that "the [defendant] shall also be entitled to have in person visits with [R]" after engaging in at least four sessions with a mental health professional. Relevant to this appeal, the order as to R also provides: "*Unless the* [*plaintiff*] *reasonably determines*, after consultation with [R's] therapist, that the supervised visits are causing negative behavioral or emotional consequences for [R], then the [defendant] shall thereafter be entitled to reasonable, incrementally increased, unsupervised visitation with [R] *on a schedule approved by the* [*plaintiff*] *from time to time. If, at any time, the* [*plaintiff*] *reasonably determines, after consultation with* [*R's*] *therapist, that the unsupervised visits are causing negative behavioral or emotional consequences for* [*R*], *then the* [*plaintiff*] *may either suspend the* [*defendant's*] *visitation or reinstate the requirement of supervision of the visits by a third party* . . . ." (Emphasis added.) It is this particular order that is at issue in this appeal.

The defendant appealed from the trial court's order. On appeal, the defendant argued, among other things that are not at issue in this appeal, that the trial court had improperly delegated its judicial authority by giving the plaintiff decision-making authority over the defendant's visitation with the children. *R. H.* v. *M. H.*, 219 Conn. App. 716, 719, 296 A.3d 243 (2023). A majority of the Appellate Court panel concluded that the trial

R. H. *v.* M. H.

court had improperly delegated its judicial authority and, consequently, reversed in part the trial court's order. Id., 719, 751. The majority reasoned that "the order pertaining to the defendant's visitation with R is an improper delegation of authority because the [trial] court effectively delegated to the plaintiff, in consultation with the child's therapist, the authority to suspend or terminate the defendant's visitation with R and its attendant obligation to consider the best interests of R pursuant to [General Statutes] § 46b-56 (c) before doing so." Id., 740. The majority concluded that, when "a governing statute squarely places the obligation on the trial court to decide custody and visitation in contested disputes, delegation of this responsibility to a nonjudicial entity, whether it be a parent or [a] third party, is impermissible." Id., 749. Chief Judge Bright concurred in part and dissented in part, concluding in relevant part that the trial court "properly exercised its [statutory] authority . . . by crafting a visitation order that gave the defendant the opportunity to maintain and improve her relationship with R while protecting R's best interests." Id., 752 (*Bright, J.*, concurring in part and dissenting in part).

Thereafter, the plaintiff filed a motion for reconsideration en banc, which the Appellate Court granted, limited to the issue of whether the trial court had improperly delegated its judicial authority. Prior to oral argument before the full Appellate Court, the appeal was this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1. Due to the transfer, and because the Appellate Court's judgment as to the question of delegation of judicial authority was rendered ineffective when that court granted reconsideration, we review the trial court's order on this issue, rather than the judgment of the Appellate Court, on appeal.[3]

_____

[3] Our jurisdiction over this appeal does not arise from the certification process set forth in General Statutes § 51-197f and implemented by Practice Book § 84-1. Instead, we have jurisdiction by transfer pursuant to § 51-199

R. H. *v.* M. H.

On appeal, the defendant contends that a trial court cannot "delegate its judicial authority to any person serving the court in a [nonjudicial] function." (Internal quotation marks omitted.) *Nashid* v. *Andrawis*, 83 Conn. App. 115, 120, 847 A.2d 1098, cert. denied, 270 Conn. 912, 853 A.2d 528 (2004). She claims that the trial court's order empowering the plaintiff to unilaterally suspend her visitation with R was an improper delegation of the court's judicial authority, as the order impermissibly permitted the plaintiff to define the nature and scope of the defendant's contact with the children. The defendant argues that "common sense should dictate that, in contentious divorce cases—without findings and charges of abuse—giving one parent control over visitation is an invitation for the parent with control to weaponize that power against the other parent." (Emphasis omitted.) Relying on the Virginia Court of Appeals' decision in *Rainey* v. *Rainey*, 74 Va. App. 359, 869 S.E.2d 66 (2022), the defendant argues further that, if therapists and other professionals who deal with children on a regular basis cannot be delegated the authority to make visitation orders, then the trial court similarly may not delegate such authority to a litigant in a high conflict case. See id., 387 ("[l]eaving the sole power of increased visitation with such a party invites abuse and inequity").

For his part, the plaintiff contends that the trial court did not improperly delegate its judicial authority over visitation to the plaintiff because the trial court also concluded that the defendant was not unconditionally entitled to unsupervised visitation. He argues that this

(c). See Practice Book § 65-1. Although there is an Appellate Court decision in this case, the aspect of the decision relating to the issue of improper delegation became ineffective when the Appellate Court granted the plaintiff's motion for reconsideration en banc pursuant to Practice Book § 71-5. See Practice Book § 84-4 (a) (motion for reconsideration is example of motion that, "if granted, would render the Appellate Court order or judgment ineffective").

R. H. *v.* M. H.

case is akin to *Lehane* v. *Murray*, 215 Conn. App. 305, 283 A.3d 62 (2022), in which the Appellate Court rejected an improper delegation challenge to a trial court order providing that a father may alter, change, or modify the mother's ordered visitation schedule; see id., 307, 309; and *Zilkha* v. *Zilkha*, 180 Conn. App. 143, 183 A.3d 64, cert. denied, 328 Conn. 937, 183 A.3d 1175 (2018), in which the Appellate Court upheld a trial court's order deciding that a father did not have any right to custody or visitation but allowing for voluntary visitation at the discretion of his children. See id., 145–46, 168, 172–73. We agree with the defendant.

We begin with the standard of review and the relevant legal principles. Whether the trial court improperly delegated its judicial authority is a legal question over which we have plenary review. See, e.g., id., 170.

"It is well settled . . . that [n]o court in this state can delegate its judicial authority to any person serving the court in a nonjudicial function. The court may seek the advice and heed the recommendation contained in the reports of persons engaged by the court to assist it, but in no event may such a nonjudicial entity bind the judicial authority to [issue] any order or [to render a] judgment so advised or recommended. . . . A court improperly delegates its judicial authority to [a nonjudicial entity] when that person is given authority to issue orders that affect the parties or the children. Such orders are part of a judicial function that can be done only by one clothed with judicial authority." (Internal quotation marks omitted.) *Thunelius* v. *Posacki*, 193 Conn. App. 666, 674, 220 A.3d 194 (2019); see, e.g., *Valante* v. *Valante*, 180 Conn. 528, 532–33, 429 A.2d 964 (1980) (trial court may not delegate its statutory decision-making authority to nonjudicial entity); see also, e.g., *Masters* v. *Masters*, 201 Conn. 50, 64–66, 513 A.2d 104 (1986).

R. H. *v.* M. H.

The trial court's authority to issue orders pertaining to the custody and visitation of minor children is prescribed by statute. Section 46b-56 (a) provides in relevant part that "the court may make or modify any proper order regarding the custody, care, education, visitation and support of the children if it has jurisdiction . . . ." Section 46b-56 (a) thus authorizes *the trial court alone* to make or modify any proper order regarding custody and visitation of a minor child. Subsection (b) of § 46b-56 provides in relevant part that a trial court, in crafting such orders, shall consider "the rights and responsibilities of both parents . . . and the court shall enter orders accordingly that serve the best interests of the child and provide the child with the active and consistent involvement of both parents commensurate with their abilities and interests. . . ." Section 46b-56 (c) requires the trial court, when making or modifying an order as provided in subsections (a) and (b), to "consider the best interests of the child" and enumerates seventeen factors the court may consider. None of the provisions in § 46b-56 permits the delegation by a trial court of its statutory duty to one of the litigants before it.

Our starting point, then, is that the statutory language itself precludes a trial court from delegating decision-making authority over whether a parent has visitation rights to anyone who is not a judge. See General Statutes § 46b-56 (a) ("*the court* may make or *modify* any proper order regarding the custody, care, education, *visitation* and support of the children if it has jurisdiction" (emphasis added)). Only the trial court can modify its prior order regarding visitation. With respect to child custody and visitation orders, § 46b-56 "grants the trial court continuing jurisdiction to make or modify any proper order regarding the education and support of the children and of care, custody and visitation . . . according to the court's perception of the best interests of the child. . . . *This judicial responsibility cannot be delegated,*

nor can the parties abrogate it by agreement. . . . *In the final analysis, the court retains jurisdiction to determine and advance the best interests of the child.*'' (Citations omitted; emphasis added; internal quotation marks omitted.) *Masters* v. *Masters*, supra, 201 Conn. 65–66.[4]

In applying this statutory provision, this court has also explained that a trial court improperly delegates its judicial authority when that court removes itself entirely from the decision-making process. See, e.g., *Valante* v. *Valante*, supra, 180 Conn. 532–33 (trial court authorized domestic relations officer to resolve disagreements with respect to division of marital property, and this court concluded that rendering decision concerning property distribution is judicial function); see also, e.g., *Nashid* v. *Andrawis*, supra, 83 Conn. App. 120–22 (trial court's proposed orders directing that child related matters be resolved through binding arbitration were improper delegation of judicial authority); *Weinstein* v. *Weinstein*, 18 Conn. App. 622, 629, 561 A.2d 443 (1989) (trial court's orders empowering guardian ad litem to resolve disputes between parties were improper delegation of court's judicial function).

Furthermore, more recent cases from the Appellate Court have recognized the nuances that arise in the context of orders addressing child custody and visitation. For example, in *Zilkha*, the trial court found that the defendant's relationship with his children was strained due to years of fighting and conflict between the parties. See *Zilkha* v. *Zilkha*, supra, 180 Conn. App. 147–49, 161–62. As a result, the trial court's postdissolu-

---

[4] In *Masters*, this court concluded that parties could, by agreement, arbitrate certain matters, such as most child support disputes, without the trial court's approval. See *Masters* v. *Masters*, supra, 201 Conn. 68–69. Significantly, however, we explained that, ''[b]ecause determinations of custody go to the very core of the child's welfare and best interests, most courts prohibit arbitration of custody disputes.'' Id., 67.

R. H. *v.* M. H.

tion order limited the defendant's visitation with his fifteen year old children to voluntary visitation at their discretion. See id., 165. The defendant argued that the trial court impermissibly delegated its judicial authority to the children in giving them sole discretion over his visitation. See id., 168. The Appellate Court concluded that, when the trial court crafted its order, "rather than delegating its responsibility, the court exercised its authority and met its obligation to decide issues of custody and visitation . . . . This adjudication by the court was the antithesis of a delegation because it plainly decided that the defendant should not have any *right* to custody or visitation. The fact that the court's order left open the possibility of voluntary visits at the discretion of the [children] does not transform the court's decision-making into impermissible delegation." (Emphasis in original.) Id., 172.

Subsequently, the Appellate Court considered whether a trial court had improperly delegated its judicial authority regarding a father's contact with his child to the child's therapist. See *Kyle S.* v. *Jayne K.*, 182 Conn. App. 353, 370, 190 A.3d 68 (2018). The trial court ordered that "[the child's therapist] will dictate the scope of [the father's] contact with [the child] in a therapeutic setting." (Emphasis omitted; internal quotation marks omitted.) Id., 371. The trial court also stated that it was "restricting . . . contact so that the [therapist could] be in charge." (Emphasis omitted; internal quotation marks omitted.) Id. The Appellate Court acknowledged that a trial court is permitted to seek advice from a nonjudicial entity but concluded that the trial court had "advanced past that point . . . ." Id., 372. Accordingly, the Appellate Court reversed that decision, concluding that the trial court had "improperly removed itself from the decision-making process by permitting [the therapist] to decide the *nature and scope* of [the father's] contact with [the child]." (Emphasis added.) Id., 373.

R. H. *v.* M. H.

Finally, in *Lehane*, the Appellate Court determined that a trial court's order allowing the defendant father to " 'alter, change or modify' " the visitation schedule was not an improper delegation of judicial authority. *Lehane* v. *Murray*, supra, 215 Conn. App. 307; see id., 309, 315. The Appellate Court reasoned that the order "did not . . . give the defendant unbridled authority to modify [the plaintiff's] right to visit their son; nor did the [trial] court give the defendant unilateral authority to suspend or terminate [the plaintiff's] parenting access to their son." (Internal quotation marks omitted.) Id., 315. The Appellate Court emphasized that the order "permit[ted] the defendant to modify the plaintiff's visitation *schedule*, not to modify her *right* to visitation." (Emphasis in original.) Id. Thus, the Appellate Court concluded, the trial court "properly exercised its decision-making authority" in allowing the defendant to alter, change, or modify the plaintiff's visitation schedule while not permitting him to reduce, suspend, or terminate the plaintiff's access to their child. Id., 318.

We find this line of cases from the Appellate Court instructive. We read these cases to stand for the proposition that a trial court cannot remove itself entirely from the decision-making process, and, although a court order may authorize a parent to modify the other parent's visitation *schedule*, it may "not . . . modify [the other parent's] *right* to visitation." (Emphasis in original.) Id., 315. We agree. For example, it would not be an improper delegation of judicial authority if a trial court permitted a custodial parent the ability to, within reason, change one day of visitation from Monday to Tuesday because of a legitimate conflict. It would, however, be an improper delegation of judicial authority to authorize the custodial parent to refuse to allow the noncustodial parent who has visitation rights to visit the child, as in the present case. The Appellate Court's reasoning in *Zilkha* is not to the contrary. In that case,

R. H. *v.* M. H.

the Appellate Court concluded that the trial court's order limiting the defendant's visitation with his children to voluntary visitation at their discretion was not an improper delegation because the trial court "plainly decided that the defendant should not have any *right* to custody or visitation." (Emphasis in original.) *Zilkha* v. *Zilkha*, supra, 180 Conn. App. 172.

In the present case, the trial court's visitation order effectively removes the court entirely from the decision-making process and delegates its authority to the plaintiff to suspend visitation. See, e.g., *Valante* v. *Valante*, supra, 180 Conn. 532–33. By contrast, the defendant cannot file a motion to modify visitation without first seeking permission from the trial court to file that motion. See Practice Book § 25-26 (g). We recognize that the trial court was faced with a difficult situation in which it concluded that the defendant's actions had caused emotional and psychological harm to her children, and its visitation order was an attempt to best address that situation. In this case, however, the trial court exceeded the admittedly broad discretion it had when it authorized the plaintiff to suspend the defendant's visitation.

We conclude that the trial court's order authorizing the plaintiff to exercise unilateral control over the defendant's visitation with R was an improper delegation of judicial authority because the court delegated to the plaintiff, in consultation with the child's therapist, the authority to suspend or terminate the defendant's visitation with R. Unlike the order in *Zilkha*, in which the trial court concluded that the defendant did not have any right to visitation; see *Zilkha* v. *Zilkha*, supra, 180 Conn. App. 172; the order in the present case granted the defendant a specific right to visitation after the defendant engaged in at least four sessions with her mental health professional. The trial court went on to state that the defendant "shall thereafter be *entitled* to reasonable, incrementally increased, unsupervised

R. H. *v.* M. H.

visitation with [R] on a schedule approved by the [plaintiff] from time to time.” (Emphasis added.) The trial court’s order became an impermissible delegation of judicial authority when the court gave the plaintiff, after consultation with the child’s therapist, the ultimate authority to suspend the defendant’s right to visitation altogether.

Unlike the order in *Lehane*, the order in the present case was not limited to allowing the plaintiff to modify the visitation *schedule*; it permitted the plaintiff to unilaterally suspend the defendant’s *right* to visitation with R. Cf. *Lehane* v. *Murray*, supra, 215 Conn. App. 315 (order was not impermissible delegation of authority because “the [trial] court did not . . . give the defendant ‘unbridled’ authority to modify her right to visit their son; nor did the court give the defendant *unilateral authority to suspend* or terminate [the plaintiff’s] parenting access to their son” (emphasis added)). The fact that the trial court’s order required the plaintiff to act reasonably and consult with R’s therapist before exercising this authority does not save the order from being an impermissible delegation of judicial authority.

It is important to emphasize that the trial court’s order in this case places the decision-making authority in the hands of a party to the litigation. It is hard to conceive of a class of litigation that is, on the whole, more emotionally charged, conflict-ridden and personally contentious than marital dissolution actions and child custody and visitation disputes. Allowing the custodial parent to make visitation decisions for the noncustodial parent creates a situation ripe for misjudgment and abuse.[5]

---

[5] This case highlights one problem that may arise when a parent has authority over the other parent. The trial court had ordered that the defendant attend family therapy with the same therapist as S. This requirement was complicated by the fact that the plaintiff did not provide the defendant with the name of S’s therapist.

R. H. *v.* M. H.

We note that the majority of jurisdictions that have addressed whether a trial court can delegate its authority to a custodial parent have concluded that this type of delegation is improper. See, e.g., *R. H.* v. *M. H.*, supra, 219 Conn. App. 742–43 n.11 (citing cases). We find the reasoning from the Virginia Court of Appeals in a recent case insightful. In *Rainey* v. *Rainey*, supra, 74 Va. App. 359, the trial court ordered that the father would have sole physical custody and forbade the mother from contacting the children outside of therapeutic letter writing. See id., 376. The trial court also granted "[the] father sole discretion to consent to supervised visitation between the [m]other and [the] children with a supervisor of [the] [f]ather's choice if [he] believe[d] that [the] [m]other is appropriate and will not cause harm to the children . . . ." (Internal quotation marks omitted.) Id., 383.

On appeal, the Virginia Court of Appeals concluded that the trial court "abdicated its statutory power, and duty, to determine visitation"; id.; and reasoned that, when "the governing statutes squarely place the obligation to make contested visitation decisions on the judiciary, delegation of this responsibility to third parties or parents is unauthorized." Id., 387. Significantly, the Court of Appeals also explained that, "from a practical standpoint, there are obvious problems inherent in delegating judicial decision-making functions to a party. First, particularly in child custody and visitation cases, *parties are likely to have difficulty communicating and seeing past their inherent biases. Leaving the sole power of increased visitation with such a party invites abuse and inequity*." (Emphasis added.) Id. The court further reasoned that, because the father had no relevant training that would allow him to make clinical determinations with respect to whether the mother's behavior would harm the children, the order gave the father "the power to make an uneducated decision by

himself'' or encouraged him to defer to a trained professional, which was "a [roundabout] way of impermissibly delegating judicial power to a third party." Id., 388. The Virginia Court of Appeals concluded that the trial court had erred in giving the father the power to determine the mother's visitation with the children. Id., 391.

There are cases, however, that have concluded that a trial court may delegate authority to a custodial parent. For example, the North Dakota Supreme Court acknowledged the "highly unusual" nature of orders granting visitation subject to a custodial parent's discretion but nevertheless upheld the trial court's visitation order, which granted the father visitation at the mother's discretion, because there was a need to protect the children from the father's drug use. *Wigginton* v. *Wigginton*, 692 N.W.2d 108 (N.D. 2005); see id., 112–13. Similarly, the Alabama Court of Civil Appeals upheld a visitation order that permitted the mother to refuse the father's visitation with their children "if she believe[d] that he is under the influence of drugs or alcohol or that he is placing the children in an unsafe environment or a place of danger . . . ." *Watkins* v. *Lee*, 227 So. 3d 84, 85 (Ala. Civ. App. 2017). The court reasoned that, "[i]n light of the evidence presented regarding the parties' history of domestic violence, the father's past exposure to drugs, [an] incident in which the son had been burned, the possibility that the father had planned to relocate with the children, the manner in which the father had treated the son, and the father's recent marijuana use, the trial court could have reasonably concluded that, based on the particular facts and circumstances of [the] case, including the refusal provision in its judgment was a narrowly tailored means of preserving the father's rights and serving [the] children's best interests by protecting their health and safety." Id., 89.

We disagree with the reasoning in these cases to the extent that the cases permit the delegation of judicial

R. H. *v.* M. H.

authority to custodial parents. As we explained, given the inherent tensions between the parties in visitation cases, we conclude that a trial court shall not delegate to a parent its judicial authority to suspend visitation with the other parent. Moreover, even if the reasoning in these cases is sound, the facts of those cases are inapposite to the present case. Unlike the trial courts in the North Dakota and Alabama cases, the trial court in the present case specifically concluded that the defendant had "not caused physical harm to her children, and there [was] no reason to believe [that] she is a threat to do so." Acknowledging that the defendant has caused emotional harm to her children, the trial court nevertheless emphasized that the defendant "is an intelligent, engaging woman, who is desperate to have a normal relationship with the children she loves. She has, at times during the pendency of the postjudgment litigation, demonstrated her ability to be an excellent mother . . . ." To the extent that a trial court is concerned about the safety of a child at the time it makes its visitation order, the court, in exercising its broad discretion, may make accommodations to ensure the safety of the child. For example, it may require that the visitation be supervised. What a trial court may not do, however, is allow the custodial parent to decide whether the noncustodial parent may even be allowed to visit with his or her child. Thus, even under the rationale in the North Dakota and Alabama cases, a delegation of judicial authority to the plaintiff in the present case would have been inappropriate.

There is good reason that, when a governing statute squarely places the obligation on the trial courts to decide custody and visitation, a trial court may not impermissibly delegate that judicial authority. As an impartial decision maker, the trial court alone "ultimate[ly] [bears] responsibility for determining and protecting the best interests of children in family disputes . . . ." *Masters*

R. H. *v.* M. H.

v. *Masters*, supra, 201 Conn. 64. The requirement of impartial decision-making is cast aside when that judicial responsibility is delegated to the custodial parent in a custody and visitation dispute, even though the need for impartial decision makers in such disputes is even more clear. Indeed, given the often contentious nature of postdissolution relationships, a rule permitting a custodial parent to decide visitation poses even greater concerns than a rule permitting objective third parties to decide visitation. See, e.g., *Rainey* v. *Rainey*, supra, 74 Va. App. 387. Courts in Connecticut have previously rejected a rule that would permit such a delegation to third parties, such as guardians ad litem; see *Weinstein* v. *Weinstein*, supra, 18 Conn. App. 629; and therapists. See *Kyle S.* v. *Jayne K.*, supra, 182 Conn. App. 372–73. Although we need not decide whether there can ever be a situation in which a trial court may delegate authority to an objective third party, we are confident that drawing the line at delegating authority to a parent to indefinitely suspend visitation is appropriate. Such a practice invites greater occasion for friction and disagreement between parents. As the Shared Parenting Council of Connecticut, Inc., argues in its amicus brief, "[c]hildren are not well served" by orders that "allocate all decision-making authority to" one parent. Such an order, the amicus argues, only adds to the adversarial environment.

Our trial judges face ever-changing and volatile circumstances requiring judicial intervention, even after judgment has been rendered. These judges admirably exercise their broad discretion in contested visitation cases in an effort to accommodate the interests of all of the parties and the children. Often, in these contentious situations, there is an urgent need to make modifications in light of developments in the case. For example, it may be necessary for parents to have rapid access

R. H. *v.* M. H.

to our courts in instances in which a child's safety is at risk.

We reaffirm "that decision-making in family disputes requires flexible, individualized adjudication of the particular facts of each case without the constraint of objective guidelines." (Internal quotation marks omitted.) *Yontef* v. *Yontef*, 185 Conn. 275, 278, 440 A.2d 899 (1981). "[I]n matters involving child custody, and, by implication, visitation rights . . . the rights, wishes and desires of the parents must be considered [but] it is nevertheless the ultimate welfare of the child [that] must control the decision of the [trial] court. . . . In making this determination, the trial court is vested with broad discretion . . . ." (Citations omitted; internal quotation marks omitted.) *Ridgeway* v. *Ridgeway*, 180 Conn. 533, 541, 429 A.2d 801 (1980). It is critically important that our trial judges be afforded broad discretion when crafting visitation orders in order to best account for the interests of the parties and the children in often highly contentious and ever evolving situations. The trial judges may not, however, delegate to the custodial parent the authority to suspend the visitation rights of a noncustodial parent.

The trial court's order is reversed insofar as that court's modification of custody was based on a determination that a nonjudicial entity may suspend the defendant's visitation rights with R and the case is remanded for further proceedings solely as to that issue.

In this opinion D'AURIA, ECKER, ALEXANDER and DANNEHY, Js., concurred.

ROBINSON, C. J., with whom MULLINS, J., joins, concurring in the judgment. I agree with the majority's reversal of the trial court's custody and visitation order on the ground that it was an improper delegation of the court's judicial authority. Nevertheless, I write sepa-

R. H. *v.* M. H.

rately because I disagree with the majority's conclusion that a visitation order permitting a custodial parent even limited authority to suspend a minor child's visitation with a noncustodial parent is an improper delegation of the court's judicial authority. Instead, guided by the policy concerns raised by the amici curiae in this case, I conclude that a visitation order conferring very limited authority on a custodial parent to suspend visitation may be rendered in limited circumstances, namely, when (1) there is a demonstrated need to protect a child from the potential for physical, emotional, or psychological harm caused by the noncustodial parent, and (2) the order allows only for the cancellation of a particular scheduled visitation, but not for an indefinite suspension of that right. Given the trial court's finding in this case that the actions of the defendant mother, M. H., posed a risk of emotional or psychological harm to the parties' minor children, this case presents a paradigmatic example of one in which it would have been appropriate for the trial court to provide appropriately limited discretion over visitation to the plaintiff father, R. H. Because the trial court's order went too far by allowing the plaintiff to indefinitely suspend the defendant's visitation, however, I agree that the trial court's decision to grant the plaintiff's motion to modify custody should be reversed. Accordingly, I concur in the judgment.

At the outset, I agree with the majority's recitation of the statement of the facts, procedural history, and standard of review applicable to this appeal. I also agree with the majority's conclusion that the Appellate Court correctly concluded in *Lehane* v. *Murray*, 215 Conn. App. 305, 309, 283 A.3d 62 (2022), that providing a custodial parent with the authority to alter, change, or modify an ordered visitation schedule is not an improper delegation of judicial authority, which renders *Lehane* distinguishable from the present case. I nonetheless object

R. H. *v.* M. H.

to the majority's directive that a trial court shall not provide a custodial parent with limited authority to suspend visitation.

Instead, I agree with the observations of the amicus curiae the Connecticut Bar Association (CBA) that allowing orders of this nature have numerous beneficial effects. In particular, I agree that an order providing a custodial parent with limited discretion to suspend a noncustodial parent's visitation assists in situations in which, without such an order, a custodial parent must choose between following an order that may put a child in a harmful situation and the risk of being found in contempt by the court for not following an order in an attempt to protect the child from harm. The CBA also suggests, and I agree, that a visitation order of this nature provides both parents with guidance as to acceptable behavior, thereby reducing concerns with respect to contempt of court.

Additionally, as the amici curiae Greater Hartford Legal Aid, Inc., Connecticut Legal Services, Inc., and New Haven Legal Assistance Association, Inc. (legal services providers) emphasize, I conclude that the availability of orders of this kind are particularly important in cases involving family violence. The legal services providers aptly observe that providing a custodial parent with some leeway in controlling visitation can offer a child the chance to connect with the noncustodial parent while still giving the custodial parent the ability to keep the child safe. Although there is no allegation of family violence with respect to the parties in the present case, the majority's broad holding may nonetheless have the negative effect of limiting the ability of trial courts in future cases to protect children who have been or might be exposed to domestic violence. I would not decide this case in such a categorical manner.

Although I conclude that a custodial parent may be granted limited authority over a minor child's visitation

R. H. *v.* M. H.

with a noncustodial parent when there is a demonstrated need to protect the child from the potential for physical, emotional, or psychological harm caused by the noncustodial parent, the trial court's visitation order in this particular case went too far by allowing the plaintiff the authority to suspend the defendant's visitation with their son, R, *indefinitely*. Instead, such an order should preserve the authority of the court and minimize delegation concerns by allowing only for the cancellation of a particular, scheduled visitation, but not for an indefinite suspension. For example, if a custodial parent brings a child for a scheduled visitation with the noncustodial parent and observes that the noncustodial parent is intoxicated or is experiencing a mental health crisis that might result in the child being harmed physically, psychologically, or emotionally, a custodial parent could, depending on the language of the order, have the authority to cancel that visitation for the protection of the child, with emergency resort to the court being necessary to obtain any additional restrictions or modifications with respect to future visits. As this court has concluded previously, "it should be presumed that when primary physical custody was entrusted to the custodial parent, the court making that determination considered that parent to be the proper parent to make the day-to-day decisions affecting the welfare of the child." *Ireland* v. *Ireland*, 246 Conn. 413, 426, 717 A.2d 676 (1998). Such day-to-day decisions should include, in cases such as this one, whether a particular, scheduled visitation is safe for the child. Nevertheless, in the absence of judicial intervention, potentially on an emergency basis, the custodial parent would still have to make the child available for the next scheduled visitation and to try again. In my view, such an order is akin to the order in *Lehane*, which uses the nomenclature of "schedul[-ing]," and which is not an improper delegation of judicial authority. See *Lehane* v. *Murray*, supra, 215 Conn. App. 314–15.

R. H. *v.* M. H.

My conclusion finds support from courts in other jurisdictions[1] that have concluded that trial courts may, under certain circumstances, provide custodial parents with discretion over visitation to protect their children from situations that may cause the children harm. In *Wigginton* v. *Wigginton*, 692 N.W.2d 108 (N.D. 2005), for example, the trial court granted custody of the children to the mother and granted the father, who had abused methamphetamine, visitation at the mother's discretion. See id., 110–11. Although the North Dakota Supreme Court acknowledged that such orders are "highly unusual" and should not be "done lightly"; (internal quotation marks omitted) id., 112; it upheld the custody and visitation order in that case because there was a demonstrated need to protect the children from the father's drug use while taking advantage of the mother's willingness to foster a relationship between the children and their father. See id., 112–13. The court also emphasized that the father could seek to modify the visitation order if he felt that he was being treated unfairly by the mother and once he had taken action to convince the trial court that he was no longer abusing methamphetamine. See id., 113; see also *Watkins* v. *Lee*, 227 So. 3d 84, 91 (Ala. Civ. App. 2017) (Thomas, J., concurring specially) ("[w]hen [an unsafe environment is] present, it is not a competition between the custodial rights of the respective parents with which the law is concerned; its

[1] I note that the majority relies heavily on the reasoning of the Virginia Court of Appeals in *Rainey* v. *Rainey*, 74 Va. App. 359, 869 S.E.2d 66 (2022). In *Rainey*, the court held that the trial court had improperly delegated its authority when it ordered that the father have sole physical custody and granted him the discretion to consent to supervised visitation between the mother and the children if he believed that the mother would not cause harm to the children. See id., 373, 386–87, 391. I, however, agree with Chief Judge Bright's concurring and dissenting opinion in the Appellate Court that "[s]uch reasoning 'ignores the presumption that parents act in the best interests of their children.' " *R. H.* v. *M. H.*, 219 Conn. App. 716, 771, 296 A.3d 243 (2023) (*Bright, C. J.*, concurring in part and dissenting in part), quoting *Roth* v. *Weston*, 259 Conn. 202, 222, 789 A.2d 431 (2002).

R. H. *v.* M. H.

aim is rather to protect the right of the children to be free from such conditions—an entitlement to which the noncustodial parent's visitation rights must necessarily be subordinated"). I agree that crafting a visitation order that provides a custodial parent with limited discretion to suspend visitation should not be "done lightly" and, therefore, that such an order should be utilized only in extraordinary circumstances. (Internal quotation marks omitted.) *Wigginton* v. *Wigginton*, supra, 112. In the present case, the specific examples of negative emotional and psychological impact on the parties' children (and R, in particular) found by the trial court and discussed in the majority opinion justify the trial court's exercise of its discretion to impose this type of "highly unusual" visitation order. Id.

To the extent that the majority bars orders that allow the limited suspension of visitation by custodial parents, it undercuts its own observations that "[i]t is critically important that our trial judges be afforded broad discretion when crafting visitation orders," "'that decision-making in family disputes requires flexible, individualized adjudication of the particular facts of each case without the constraint of objective guidelines,' "[2] and that " 'the rights, wishes and desires of the parents must be considered [but] it is nevertheless the ultimate welfare of the child [that] must control the decision of the [trial] court.' "[3] Language to this effect in the majority opinion does not afford trial courts broad discretion or the ability to make flexible, individualized decisions. Instead, the majority deprives trial courts of the ability to operate in the gray areas in which a parent may not be statutorily unfit, yet also has a profoundly troubled relationship with his or her minor child. Permitting a custodial parent limited authority over a minor child's visitation with a noncustodial parent preserves the dis-

[2] Quoting *Yontef* v. *Yontef*, 185 Conn. 275, 278, 440 A.2d 899 (1981).

[3] Quoting *Ridgeway* v. *Ridgeway*, 180 Conn. 533, 541, 429 A.2d 801 (1980).

R. H. *v.* M. H.

cretion of our trial courts to cautiously foster these relationships in extreme cases such as this one.

Because I would reverse the trial court's order in this case, but do not conclude that a visitation order permitting a custodial parent very limited authority over a minor child's visitation with a noncustodial parent is *always* an improper delegation of the court's judicial authority, I concur in the judgment.